# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| **KRAFT FOODS GLOBAL, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) No. 10 C 8006 |
| vs. | ) |
| | ) Judge Joan H. Lefkow |
| **DAIRILEAN, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Kraft Foods Global, Inc. ("Kraft") filed a complaint against Dairilean, Inc. ("Dairilean") requesting a declaratory judgment of non-infringement and invalidity of United States Patents Nos. 5,352,468 (the "'468 patent"), 6,251,459 (the "'459 patent"), and 6,465,030 (the "'030 patent"). The parties are unable to agree on the terms for a protective order that would relate to the production of information involving trade secrets or confidential research and development or commercial information. Kraft and Dairilean have filed motions for entry of protective orders that make various modifications to the Interim Order that is in place in this district. *See* Local Patent Rules, App. B. For the following reasons, the modification requested in Dairilean's motion [#32] is denied without prejudice and the modifications requested in Kraft's motion [#21] are granted in part and denied in part.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(c)(1)(G), the court may enter a protective order "requiring that a trade secret or other confidential research, development, or commercial

information not be revealed or be revealed only in a specified way." The party requesting a protective order has the burden of demonstrating to the court that "good cause" exists for its issuance. *Jepson* v. *Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). Where the protective order relates to the production of trade secrets or other confidential information, "[t]he sole question is whether there is an unacceptable risk of or opportunity for 'inadvertent disclosure' of confidential information." *Pfizer Inc.* v. *Apotex Inc.*, 744 F. Supp. 2d 758, 762 (N.D. Ill. 2010) (quoting *Autotech Techs. Ltd. Psp.* v. *Automationdirect.com, Inc.*, 237 F.R.D. 405, 407 (N.D. Ill. 2006)). The court must weigh the risk of inadvertent disclosure against the burden that would be placed on the requesting party if it does not receive the information it seeks. *Id.*

## DISCUSSION

**I.  Dairilean's Motion for Entry of a Modified Protective Order**

Dairilean requests a modification of this district's Interim Order to allow Bruce Schroder, the inventor of the patents-at-issue and the founder and sole employee of Dairilean, to view information that Kraft designates as Highly Confidential. Dairilean proposes the addition of the following language to the end of paragraph 4(d) of the Interim Order, "Notwithstanding the foregoing, if Defendant designates Bruce Schroder as its expert, and Mr. Schroder executes an undertaking in the form of Appendix 1 to this Order, then Mr. Schroder may serve as Defendant's expert witness, and he shall have access to Highly Confidential Information in that capacity." Def.'s Mot. for Protective Order, Ex. 7 at ¶ 4(d). Dairilean argues that Schroder should have access to Kraft's Highly Confidential information, in addition to Kraft's Confidential information, because he will be designated as Dairilean's expert in these

2

proceedings and, as the inventor of the patents-at-issue, he is the person who is best-positioned to analyze Kraft's allegations of non-infringement and invalidity. Dairilean asserts that if Schroder cannot access Kraft's Highly Confidential information it will not be able to meaningfully participate in this case because it has limited funds to pay another outside expert and Schroder will not be able to analyze all of the relevant documents in preparing his expert report. Kraft opposes Dairilean's proposed modification on numerous grounds, the most salient being that Schroder is a competitive decisionmaker at Dairilean. Kraft states that there is a risk that it will be harmed by the disclosure of the precise formulation and method of manufacturing of Velveeta products and information concerning Kraft's sales, marketing, and commercial dealings regarding Velveeta.

Courts look to an individual's involvement in "competitive decisionmaking" as grounds for barring access to trade secrets or otherwise confidential information. *U.S. Steel Corp.* v. *United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). This phrase refers to a person's "activities, association, and relationship with a client that are such as to involve . . . advice and participation in any or all . . . decisions (pricing, product, design, etc.) made in light of similar or corresponding information about a competitor." *Id.* at 1468 n.3. "[T]he standard is not regular contact with other corporate officials who make policy, or even competitive decisions, but advice and participation in competitive decisionmaking." *Matsushita Electric Indus. Co., Ltd.* v. *United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991) (internal quotations omitted). The court's determination that an individual is involved in competitive decisionmaking must be based upon the facts of the particular case. *U.S. Steel*, 730 F.2d at 1468.

Here, the evidence shows that Dairilean's only product is a carbonated dairy calcium-

containing beverage named M.O.O.M., which stands for "Made Out of Milk." Kraft does not contend that M.O.O.M. competes with any of its products. M.O.O.M. was last sold in 2002 or 2003 and is no longer in production. Dairilean hopes to put M.O.O.M. back in production "some day." Schroder Supp. Decl. ¶ 3. In 2005, M.O.O.M. was marketed by Espree, Inc. ("Espree"), a wholly-owned subsidiary of Dairilean of which Schroder was also the president. Espree compared M.O.O.M. to products from Yoo-hoo and Hershey's. According to Schroder, Espree ceased doing business "some years ago" and has been dissolved by the South Dakota Secretary of State. *Id.* at ¶ 7.

In the late 1990s, Schroder considered creating another Dairilean subsidiary named Joseph Cheese, Inc. that would market a cheese product named Joe Cheese. A presentation that was produced by Dairilean through the course of discovery describes Joe Cheese as a type of shredded cheese that would be specially designed for the pizza industry. Pl.'s Mot. for Protective Order, Ex. D. The presentation states that Schroder conducted trials of Joe Cheese with a number of Kraft's competitors, including Schwan's Fine Foods, Pillsbury, Little Lady Foods, Little Caesar's Enterprises, VDK Frozen Foods, Taco Bell, and Pizza Hut. Schroder estimates that the presentation is from "about 1997." Schroder Supp. Decl. ¶ 8. Schroder stopped marketing Joe Cheese in 1999 and never produced Joe Cheese as a product. *Id.*

Kraft argues that Schroder has likely engaged in additional competitive conduct that has not yet come to light. In support, Kraft asserts that Dairilean has not met discovery obligations in these proceedings and that "the documents that Dairilean is withholding would [likely] contain further evidence of its and Mr. Schroder's competitive activities in the dairy area." Pl.'s Mot. for Protective Order at 4. Dairilean responds that it is diligently searching for documents

4

responsive to Kraft's discovery requests and that no documents have been intentionally withheld.

The last patent that Schroder applied for that relates to dairy products was the '030 patent, which he applied for in June of 2001. Schroder has four pending patent applications. Three of the patents relate to the production of methane gas from various input materials and the fourth relates to a photobioreactor system comprising LED lights. Schroder is not aware that any of his pending patent applications have any relevance to Kraft's dairy products.

The foregoing facts indicate that there is some risk that Schroder would inadvertently disclose Kraft's Highly Confidential information. There is no dispute that Schroder is in charge of product development and strategic and business decisionmaking at Dairilean. Although Dairilean does not currently compete with Kraft, Schroder was previously involved with the development of, Joe Cheese, which would have competed with Kraft's products. Schroder's future plans for Dairilean are unclear. He states that he hopes to put M.O.O.M. back into production "some day." He has recently expressed interest in entering into a licensing arrangement with Kraft, on the grounds that an exemplary Velveeta product requires a license for the '468 patent. *See* Pl.'s Mot. for Protective Order, Ex. C (Letter from to Kraft from Dairilean dated Nov. 1, 2010). The fact that Schroder's other patent applications do not relate to dairy products is not, without more information, relevant to the court's assessment of Schroder's competitive decisionmaking at Dairilean. Thus it is possible, though perhaps not highly likely, that Schroder would inadvertently disclose Kraft's Highly Confidential information because of his role at Dairilean and his demonstrated interest in working on developing other products in the dairy field.

The court's assessment of the possible harm to Dairilean is hampered by the fact that the scope of the documents that would be designated by Kraft as Highly Confidential has not been clearly stated by either party. Moreover, the parties' proposed protective order creates a two-tiered confidentiality designation but the precise difference between the "Confidential" designation and the "Highly Confidential" designation is not apparent from the text of the order. Kraft agrees, however, that Schroder will be able to review all of its Confidential information pursuant to the terms of the order. Kraft further represents that Schroder will be able to serve as Dairilean's technical expert without reviewing Kraft's Highly Confidential information. Although Dairilean contends that Schroder will need to review *all* of Kraft's Highly Confidential information, it is possible that at least a subset of that information, specifically documents that relate to sales and marketing, will not be necessary for the preparation of Schroder's expert report.

Nevertheless, Dairilean has demonstrated that its defense of this case will be significantly hindered if Schroder is not able to prepare a comprehensive expert report. Given the uncertainties of the risk posed to Kraft, if specific Highly Confidential documents are necessary for the preparation of Schroder's expert report, then the balance of harms would likely weigh in favor of allowing Schroder to review the documents. Dairilean's motion will be denied without prejudice to its right to file a motion requesting permission for Schroder to review specific categories of Kraft's Highly Confidential documents that may be necessary for preparing his anticipated expert testimony and report.

## II. Kraft's Motion for a Modified Protective Order

### A. Prosecution Bar

Kraft proposes to add a prosecution bar to the Interim Order that would bar any outside counsel who reviews Highly Confidential information produced by another party from "draft[ing], prosecut[ing], or otherwise assist[ing] in the preparation or prosecution of any patent claims related to the creation of a cheese, a cheese or dairy food, or a cheese or dairy product." Pl.'s Mot. for Protective Order, Ex. A at ¶ 6. The prosecution bar will expire one year after the earlier of entry of judgment or settlement of these proceedings. *Id.* Kraft argues that a prosecution bar is necessary because there is a risk that Dairilean's outside counsel will use Kraft's Highly Confidential information to shape patent prosecution of claims for its own clients or to re-write the claims of the patents-at-issue to overcome potentially invalidating prior art or to specifically target Kraft's products. Dairilean objects to the prosecution bar on the grounds that Kraft has not established that its attorneys are involved in any competitive decisionmaking that would affect Kraft. In the alternative, Dairilean requests that any prosecution bar exclude reexamination proceedings.

When a party seeks a patent prosecution bar, it must first show that there is a risk of inadvertent disclosure of confidential information, measured by the "competitive decisionmaking" test articulated in *U.S. Steel. In re Deutsche Bank Trust Co. of Americas*, 605 F.3d 1373, 1379 (Fed. Cir. 2010). The court must then balance the risk of disclosure against the resulting harm to the party that opposes the restriction. *Id.* This determination is fact-specific, and the Federal Circuit has rejected the notion that "every patent prosecution attorney is necessarily involved in competitive decisionmaking" that would justify the imposition of a

patent prosecution bar. *Id.*; *accord Pfizer*, 744 F. Supp. 2d at 764–66. Accordingly, "a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Deutsche Bank*, 605 F.3d at 1381.

Kraft has not cited any evidence to demonstrate that Dairilean's outside counsel is involved in competitive decisionmaking with respect to Dairilean or any of its other clients who might compete with Kraft. *Cf. Methode Electronics, Inc.* v. *Delphi Automotive Systems L.L.C.*, No. 09-13078, 2009 WL 3875980, at *4 (E.D. Mich. Nov. 17, 2009) (entering protective order with a prosecution bar where defendant had "offered evidence of competitive decision-making by Mr. Wolfe, one of the lawyers representing [the plaintiff] in this case"). Essentially, Kraft requests a prosecution bar because Dairilean's litigation counsel also prosecutes patents. This type of prosecution bar was squarely rejected by the Federal Circuit in *Deutsche Bank*. 605 F.2d at 1381; *see also Matsushita Electric*, 929 F.2d at 1580. Kraft's proposed patent prosecution bar will be stricken from the protective order.

### B. In-House Counsel

Kraft argues that its in-house counsel should be allowed to review Dairilean's Highly Confidential information. Dairilean responds, in essence, that it would be unfair to allow Kraft's in-house counsel to review its Highly Confidential information unless Bruce Schroder can also review Kraft's Highly Confidential information.

Irrespective of the court's ruling on Dairilean's motion for a protective order, Dairilean's argument is not persuasive. Courts have rejected a *per se* rule barring the disclosure of

confidential information to in-house counsel or other parties. *See U.S. Steel*, 730 F.2d at 1468. Instead, courts look to whether in-house counsel is involved in competitive decisionmaking that would create a risk of inadvertent disclosure. *Id.* Dairilean has not cited any evidence to support the conclusion that Kraft's in-house counsel is involved in competitive decisionmaking at Kraft. Rather, Dairilean states generally that Kraft has six in-house patent attorneys, at least two of whom are involved in this litigation, and that Kraft appears to have hundreds of assigned patents relating to cheese food products. Kraft's proposed modification to allow in-house counsel to review Highly Confidential information will be accepted.

### C. Counsel's Evaluation of Confidential or Highly Confidential Information

Kraft's proposed order states, in relevant part, that "[c]ounsel for a party may give advice and opinions to his or her client regarding this litigation based on his or her evaluation of designated Confidential or Highly Confidential information received from the producing party – provided that such rendering of advice and opinions shall not reveal the content of such Confidential or Highly Confidential information." Dairilean objects to this provision on the grounds that it is unnecessary. The court can discern no harm to Dairilean that would result from the inclusion of this provision in the protective order. Kraft's proposed modification regarding counsel's evaluation of Confidential or Highly Confidential Information will be accepted.

### D. Notice of Unauthorized Disclosures

Kraft's proposed order requires notice of any unauthorized disclosures of Confidential or Highly Confidential information to the producing party. Dairilean agrees that the producing party should be notified of a breach in the event of an unauthorized disclosure. The modification will be accepted.

### E. Inadvertent Disclosures

Kraft proposes a modification that provides that a privilege is not waived by inadvertent disclosures and that outlines procedures to be followed in the event of inadvertent disclosure of privileged material. The modification states that the producing party shall "immediately" notify the receiving party of the production and that within five days of receiving such notification the receiving party shall return or confirm destruction of all privileged materials. Dairilean objects on the grounds that the modification is unnecessary because Federal Rule of Civil Procedure 26(b)(5)(B) already requires that a party take reasonable steps to rectify any error that results from inadvertent disclosures. The court agrees that the procedures set forth in Kraft's proposed order are not necessary and go beyond what is required by Rule 26(b)(5)(B). The proposed modification will be stricken.

### F. Third Parties or Subpoenaed Non-Parties

Kraft's proposed order allows subpoenaed non-parties to designate information as Confidential or Highly Confidential under the protective order. Kraft argues that, without this provision, discovery may be delayed as third parties petition the court to protect confidential information. "Generally, 'pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceeding." *Wiggins* v. *Burge*, 173 F.R.D. 226, 228 (N.D. Ill. 1997) (quoting *Am. Tel. & Tel. Co.* v. *Grady*, 594 F.2d 594, 596 (7th Cir. 1978)). In order to justify the entry of a protective order, a party must demonstrate good cause for the issuance of the order. *Id.* The risk that Kraft identifies is too speculative to justify the entry of a protective order that relates to unknown non-parties. The modification regarding the production of documents or things by non-parties will be stricken.

## G. Compliance with Third Party Compulsory Disclosure

Finally, Kraft's proposed order provides that if a receiving party is subpoenaed or served with a document demand in another action or proceeding, and the subpoena or document demand seeks information designated as Confidential or Highly Confidential by the producing party, the receiving party shall give written notice to counsel of record for the producing party. The provision further states that compulsory disclosure of information subject to the protective order will not be deemed a waiver of confidentiality. In addition, the receiving party "shall not disclose the documents, things, or information while any intervention by the producing party in opposing to the subpoena or other demand is pending." Pl.'s Mot. for Protective Order, Ex. A at ¶ 10.

Dairilean objects on the grounds that the meaning of the proposed modification is unclear and that the modification is unnecessary. Dairilean argues that the court presiding over the other action or proceeding will be best positioned to determine what information should be produced.

The situation envisioned by Kraft's modification is, at this point, hypothetical. Issues relating to third party compulsory disclosure are likely to be fact-specific and will be determined as they arise. The procedural posture of this case differs from *Sloan Valve Co.* v. *Zurn Indus.*, No. 10 C 204, 2011 WL 841252 (N.D. Ill. Mar. 8, 2011), which Kraft cites. In *Sloan*, the Patent and Trademark Office had requested documents subject to a protective order in the course of its reexamination of the patent-at-issue and the plaintiff was faced with conflicting obligations. Here, no third party discovery requests are anticipated or have been made.

Nevertheless, Dairilean's objections appear to focus on the production procedure outlined in Kraft's modification, rather than the notice requirement. Dairilean does not object to the

requirement of notice in the event of inadvertent disclosures, and is not likely to be harmed by the requirement that a receiving party provide notice prior to production of information that is subject to the protective order. Kraft's proposed paragraph 10 shall be included as follows: "Compulsory Disclosure to Non-Parties: If any receiving party is subpoenaed in another action or proceeding or served with a document demand, and such subpoena or document demand seeks documents, things, or information designated as Confidential or Highly Confidential by a producing party, the receiving party shall give written notice to all counsel of record for the producing party prior to production of such documents, things, or information. The receiving party shall exercise good faith in promptly notifying the producing party of the subpoena or other demand by the third party."

## CONCLUSION

For the reasons stated above, Dairilean's motion for entry of a protective order [#23] is denied without prejudice to its right to later request permission for Bruce Schroder to review specific categories of Kraft's Highly Confidential documents in his capacity as Dairilean's expert witness. Kraft's motion for entry of a protective order [#21] is granted in part and denied in part. The parties should submit a copy of a protective order that complies with the court's ruling by May 2, 2011.

Dated: April 25, 2011              Enter:_____
                                          JOAN HUMPHREY LEFKOW
                                          United States District Judge